THE CENTRAL RAILROAD AND BANKING COMPANY, plaintiff in error, *vs.* SAMUEL ANDERSON, defendant in error.

1. In a suit against a railroad company for loss of freight in a car loaded by the plaintiff, but the keys thereof retained by agents of the company, it is not error to exclude from the jury evidence that it was the custom of the company not to be responsible for the conduct of its agents who held the keys, particularly if there was no notice of such custom brought home to the plaintiff.

2. Nor, in such a suit, was it error to exclude evidence that when a car is chartered by the company, and loaded and unloaded by the owner of the goods, the company is not responsible for any loss whatever of any of the goods in such car, especially if the company's agents retain the keys, and thereby control constant access to the contents of the car, and more especially where there was a special contract which fixed the company's liability. ·

3. In the case of a chartered car, as in other cases of carriage of freight, the responsibility of the carrier begins with the delivery to it of the goods and ends with its delivery of them at the place of destination; and in this as in other bailments, after proof of loss, the burden is upon the carrier to show proper diligence; and in such carriage of freights, as in other modes, the presumption of law is against the carrier.

4. If there be a special contract, such contract, if legal, will govern; and if the evidence as to the terms of the contract be conflicting, and the jury find for the plaintiff, this court will not interfere, no error of law having been committed by the presiding judge.

Common Carriers.   Railroads.   Principal and Agent.

Evidence. Presumption. New Trial. Before Judge HILL. Bibb Superior Court. April Term, 1876.

Reported in the opinion.

R. F. LYON, for plaintiff in error.

WASHINGTON DESSAU, for defendant.

JACKSON, Judge.

Samuel Anderson sued the Central Railroad and Banking Company of Georgia, for the loss of certain potatoes shipped from Fort Valley to Atlanta.

It appears from the record that the potatoes were first shipped from Fort Valley to Macon, and then, without unloading, were shipped in the same freight car from Macon to Atlanta. The car, at Fort Valley, was put on a sidetrack, and there loaded by the plaintiff, but the defendant's agents held the key of the car, and plaintiff had to apply to the agent in the morning for the key to open the car, and then went on loading till night, when the agent took the key, and plaintiff had no other control of it. The potatoes were measured by the plaintiff or his agents, but the defendant's agents took them at the measurement and receipted for them, receiving freight on them as so many pounds. On their arrival at Atlanta, they fell off in weight, and the car was found well filled two or three feet, except opposite the doors, where the potatoes were scattering.

There were two versions of the contract of carriage. The plaintiff contended, and tried to show by evidence, that the defendant was to be relieved only from loss by natural causes, such as shrinkage, etc., etc., while the defendant insisted and tried to show that it was, by contract, not to be responsible for any loss, but chartered the car to the plaintiff with the express understanding that it would merely transport the car, and be responsible for no loss of potatoes for whatever cause. The evidence was conflicting. The jury found for the plaintiff, after deducting for shrink-

age.    The defendant moved for a new trial on various grounds, the court refused to grant it, and this refusal is the error assigned.

1.  It seems that the first ground of the motion for a new trial, was alleged error in the court in refusing to allow the defendant to show the custom of the road not to be responsible for the contract of its agents who kept the keys of cars chartered in this way.   We cannot see how such a custom could have effected the plaintiff.   It was not proposed to show that the plaintiff was informed of it, and it could not affect his contract, or the legal liability of the defendant to him.   The custom, if it exists, is a most unreasonable one.   To hold the key, and yet not be accountable for what is taken out of the car, would be contrary to all sense of right.   We doubt, if it were a contract even, that it could be maintained in the absence of some proof of diligence.

2.  The second ground was that the court erred in not allowing the defendant to show that it was the custom of the road not to be responsible for any loss whatever when a car was chartered, and the charterer of it loaded and unloaded it.   But, in this case, it seems that there was a special contract set up by both parties; they differed about its terms; the jury believed the plaintiff's version of it; and certainly no custom of the road could affect the special contract of the parties.   Besides, such a custom would be very unreasonable, unless the charterer of the car held the key to it.

3.  The third ground of error is the charge of the court, that defendant was responsible for the loss of the potatoes, though transported in a chartered car like this, if delivered into the control of defendant.   We do not see why this charge is not good law.   The Code declares that the responsibility of the carrier begins with the delivery of the goods at the place where the carrier agrees to receive them, and ends at the place of destination, according to the direc-

tion of the person sending, or the custom of the trade—Code, §2070.   Well, the potatoes were delivered to the company at Fort Valley, and when delivered at Atlanta, by the company, the potatoes were short; the shrinkage was deducted; the defendant's agents had the keys of the car until delivered; the potatoes were measured by the consignees, and, according to the Code, the loss was the carrier's.   Besides, section §2064 of the Code enacts that *in all cases of bailment*, after proof of loss, the burden of proof is on the bailee to show proper diligence.   In this case there was proof of loss, the agents of the defendant had the keys of the car, when opened the potatoes were found scattered, and no diligence was shown.   No agent who had the keys was sworn in respect to the car being kept locked, or that nothing was taken out of it on the road, or at Macon; or otherwise that the road was diligent.   Again, section 2066 enacts that, in case of loss, the presumption is against the carrier, and no excuse avails him but the act of God, or the public enemy.   There is no exception made in the case of a chartered car.   So, if there had been no express contract, the railroad company, in this case, showed no diligence so as to comply with the law in section 2064, nor did it rebut the presumption against it under section 2066.

4. But there was a contract, and it ought to have been enforced, and we think that the court and jury were right to enforce it.   It was a reasonable contract.   The company had charge of the contents of the car, by having the key to it, from the time it left Fort Valley to the time it was landed in Atlanta; and whatever was taken out of it, it ought to have paid for.   The agent of the company receipted for the potatoes by weight, taking freight at Macon for 9,600 pounds; if the measurement of the plaintiff had not suited him, he ought not to have receipted for them, and charged freight, by plaintiff's measure; as he did it, he bound the company, and the charge of the court and verdict of the jury are sustained by law and evidence.

Judgment affirmed.