**MANNING et al. v. LAMB.**

**No. 1206.**

Municipal Court of Appeals for the District of Columbia.

Argued May 19, 1952.

Decided June 23, 1952.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This was a suit for damages resulting from the loss of personal property from the plaintiff's automobile which had been stored in the defendants' garage for approximately one year. The jury allowed plaintiff $480. Defendants appeal.

Plaintiff testified that he was a scientist working with the United States Navy stationed in Norfolk, Virginia, when he received orders to go overseas. Desiring to store his automobile along with certain personal property in Washington, D. C., for the period during which he was to be out of the country, he talked with defendants' manager at their place of business, the Kalorama Garage, and explained the situation to him, specifically stating that he wanted to store his personalty along with his automobile. The manager in agreeing to this explained that the car and its contents would be put in dead storage in the basement of defendants' garage in a locked room and that everything would be safe. Plaintiff then left his automobile with defendants' manager. Returning to this country approximately one year later, he went to the defendants' garage and upon payment of the storage charge his automobile was delivered to him. He then discovered certain damage to the automobile,[1] as well as the loss of his personalty, which he immediately called to the attention of the manager, who in turn called over the two defendants, owners of the garage, and explained the situation to them. Mr. Manning, one of the defendants, then suggested that the plaintiff take his automobile home, make an inventory of all the missing items, and make a report to him later, and that the garage would quite probably reimburse the plaintiff for his loss.

Eugene X. Murphy, Washington, D.C., with whom Rex K. Nelson, Washington, D.C., was on the brief, for appellants.

Maurice Friedman, Washington, D.C., for appellee.

Defendant Manning's testimony, as well as that of the defendants' manager, corroborated plaintiff's testimony in all details except that portion pertaining to the agreement with regard to leaving the personal property in the automobile in the first

1. While there was damage to the automobile in addition to the loss of personal property, such damage is not before us on this appeal.

instance. On this point the manager testified to the effect that he had not made any agreement with plaintiff with regard to the personalty in question. This conflict in the testimony presented a purely factual issue to be determined by the jury and in view of their finding we are bound to accept the plaintiff's testimony.

It is appellants' contention that since the claim check given plaintiff at the time of the storage of the automobile contained a limitation of defendants' liability in that it stated, "Not responsible for fire or theft or articles left in cars", and since there was also a large sign on the premises which stated that "the company would not be liable for personal property left in automobiles for storage" the plaintiff was therefore on notice as to the agent's limitation of authority. The defendants argue from this that the scope of the agent's authority was therefore in issue and that it was error for the court to refuse to so instruct the jury.

■ With regard to defendants' contention that the plaintiff was bound to have known the limitation of liability as set forth on the claim check and the sign, this court has held that unless a customer knows of the terms of a limitation of liability on a claim check the limitation is not binding upon him. Lucas v. Auto City Parking Co., D.C.Mun.App., 62 A.2d 557; Palace Laundry Dry Cleaning Co. v. Cole, D.C.Mun.App., 41 A.2d 231; see also Dietrich v. Peters, 28 Ohio App. 427, 162 N.E. 753, 755, which states:

"The defense of plaintiff in error that the contract of bailment exempted him from responsibility for loss to patrons by theft is sought to be substantiated by evidence that he caused signs to be posted in his garage in the following words: 'We are not responsible for loss to patrons by theft or fire.'

"We are of the opinion that the act of the bailee in posting such signs, being his own act, is * * * unilateral in character, and is not binding upon the bailor, unless his attention was called to the sign and he expressly or impliedly agreed to same. A contract being founded upon a meeting of the minds between the contracting parties contains only such terms as are agreed upon. In the absence of evidence that the bailor agreed expressly or impliedly to the provision contained in the signs, such provision would not constitute a part of the understanding between the parties."

■■ It must be remembered that the agent with whom the plaintiff dealt in this case was the manager and, as has been said, the designation of *manager* implies general power and permits reasonable inferences that the employee so designated was invested with the general conduct and control of his employer's business.[2] The plaintiff was therefore justified in relying upon the agreement entered into with the manager regarding the storage of his personalty.

In similar situations courts have steadfastly held that a garage owner is liable for the loss of personalty when he agrees to accept personalty along with the storage of the car. Stevens v. St. Botolph Holding Co., 316 Mass. 238, 55 N.E.2d 450,[3] wherein it was said, "The defendant, as bailee for hire of the automobile and its contents, was bound to exercise due care in order to return them to the owner in as good condition as received."

■■ The defendants also contend that the damages recovered by the plaintiff should not be permitted to stand on the ground that there was no evidence introduced as to their market value. With this we do not agree. The prevailing rule is that the owner of an article, whether or not he is generally familiar with the value of like articles, may testify as to his estimate of the value of his own property. Ownership, coupled with familiarity with the quality and condition of the article, is considered sufficient qualification for his testimony. Lack of general knowledge goes to the weight of the testimony and not to its

2. Gillis v. Great Atlantic & Pacific Tea Co., 223 N.C. 470, 27 S.E.2d 283, 150 A.L.R. 1330.

3. Cf. Homan v. Burkhart, 108 Cal.App. 363, 291 P. 624.

competency.[4] This rule has special application in cases of lost or destroyed household goods and wearing apparel where ordinarily the standard of market value is recognized as not furnishing adequate compensation and resort is had to the standard of actual value to the owner.[5]

Accordingly, we think that plaintiff as owner of the personalty was qualified to testify as to its value. He testified as to the price that he paid for the articles, introducing sales slips and cancelled checks in substantiation of these prices. Testimony was also given as to the condition of the articles at the time of the bailment, as well as the length of time which he had owned each item. Considering the court's instructions in their entirety, along with the evidence introduced by the plaintiff on this point, we are of the opinion that the jury's verdict in the amount of $480 was a proper verdict based upon adequate evidence.

We have reviewed the other errors cited by the defendants and have found them to be without merit.

Affirmed.

4. Walsh v. Schafer, D.C.Mun.App., 61 A. 2d 716; Caten v. Salt City Movers & Storage Co., 2 Cir., 149 F.2d 428; Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co. v. Messenger, 181 Md. 295, 29 A.2d 653.

5. Greyvan Lines v. Nesmith, D.C.Mun. App., 50 A.2d 434; Smith's Transfer & Storage Co. v. Batigne, D.C.Mun.App., 34 A.2d 705; McCormick, Damages, § 45.