**Ward HALLMAN, Appellant,**

**v.**

**FEDERAL PARKING SERVICES, Incorporated, and New Colonial Hotel, a corporation, Appellees.**

No. 1965.

Municipal Court of Appeals for the District of Columbia.

Argued April 15, 1957.

Decided Aug. 16, 1957.

Reconsideration Denied Sept. 10, 1957.

James C. Gregg, Washington, D. C., with whom Reid C. Tait, Washington, D. C., was on the brief, for appellant.

Herman Miller, Washington, D. C., for appellees.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

From an adverse ruling in the trial court appellant brings this appeal to recover the value of personal property removed from his automobile by theft while he was a guest at the New Colonial Hotel.

The facts as developed by the evidence disclosed that on the evening of November 8, 1956, appellant with his wife and daughter stopped for a night's lodging at the hotel, in the course of their journey to Florida. When registering with the desk clerk, appellant asked if the hotel had parking facilities and was assured that the vehicle would be taken care of by the bellboy. The desk clerk testified that it was normal procedure in the hotel for the bellboy to ask an arriving guest if he wanted his car parked. The bellboy would then get a claim check from the hotel, supplied it by

appellee parking lot, if the guest desired this service.

The baggage necessary for the use of the parties during their brief stay was transferred to appellant's room and the automobile was delivered for the night by the bellboy to an open parking lot independently managed and controlled by appellee Federal Parking Services, Incorporated. There the automobile was turned over to an attendant who locked it and retained the keys. At the time the vehicle was taken to the lot, it contained pieces of luggage on the rear seat and floor, wearing apparel hung on racks, and the usual items of traveling paraphernalia, some of which had been placed under a seat. On the bellboy's return to the hotel, he gave appellant a claim check bearing the name of the parking lot and the stamped name "New Colonial." The claim check contained a printed notice limiting liability which provided that the parking lot was not responsible for loss due to theft and articles in vehicles were left at the owner's risk.

The following morning when appellant arrived at the lot for his automobile, he discovered the side window broken. The glove compartment had been forced open and emptied and personal property, including that placed under the seat, valued at approximately $557 had been removed.

From these facts the court concluded as a matter of law (1) that there was no contract of bailment between the hotel and appellant; (2) that the doctrine of *infra hospitium* was inapplicable; and (3) that while a contract of bailment existed between

the parking lot and appellant, there was no showing that it failed to exercise the degree of care required. We are unable to agree with these conclusions in whole.

We need not resolve the arrangement between the hotel and the parking lot as to whether the hotel was the agent of the parking lot or vice versa as the paucity of evidence on this point would permit a purely conjectural solution at most. We pass then to a consideration of the relationship existing between appellant and both the hotel and the parking lot and the degrees of liability, if any, to be imposed.

■ Appellant argues that once the property of a guest is taken into the custody and control of the innkeeper the goods are considered *infra hospitium* and the liability for loss or destruction of the goods imposed is that of an insurer, unless the property is lost or destroyed by an act of God, the public enemy, or by fault of the guest. This is undoubtedly the rule of common law having its source in the ancient case of Calye[1] which dealt with the innkeeper's liability for the loss of a guest's horse put to pasture. The common-law rule is of force in this jurisdiction.[2] The doctrine of *infra hospitium* has been applied in cases where a car or its contents are lost while in the exclusive care and custody of a hotel.[3] However, where the hotel takes custody of the vehicle, as here, and delivers it to a lot or garage not an integral part of the hotel and thereafter a loss of the property occurs, the better rule imposes the liability of a bailee for hire on the hotel.[4] As such it is required to exer-

1. Calye's Case, 8 Co.Rep. 32a, 77 Reprint 520.

2. Sections 34–101 and 34–102, Code 1951, have limited application and relate to certain classes of property. These provisions are not relevant to the case under consideration.

3. Park-O-Tell Co. v. Roskamp, 203 Okl. 493, 223 P.2d 375, liability imposed by statute declaratory of the common law; Merchants Fire Assur. Corp. of New York v. Zion's Sec. Corp., 109 Utah 13, 163 P.2d 319.

4. Campbell v. Portsmouth Hotel Co., 91 N.H. 390, 20 A.2d 644, 135 A.L.R. 1196; Kallish v. Meyer Hotel Co., 182 Tenn. 29, 184 S.W.2d 45, 156 A.L.R. 231; Smith v. Robinson, Tex.Civ.App., 300 S.W. 651. Cf. Bidlake v. Shirley Hotel Company, 133 Colo. 166, 292 P.2d 749; Zurich Fire Ins. Co. of New York v. Weil, Ky., 259 S.W.2d 54; Lader v. Warsher, 165 Misc. 559, 1 N.Y.S.2d 160; Weisman v. Holley Hotel Co., 128 W.Va. 476, 37 S.E.2d 94. See Annotation, 156 A.L.R. 233.

cise an ordinary degree of care to protect and return the property of which it assumes custody.

■■ The trial court, sitting without a jury, found as a fact that appellant was informed that the lot was open and that it was not a part of the hotel. We have searched the record thoroughly and conclude that this finding is without evidential support. We find only the undisputed evidence that the hotel as a policy offered its guests parking facilities and informed appellant it would take care of his car. Where a trial court's finding is entirely unsupported by evidence, an appellate court may disregard it. Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9.

■ We conclude that when the bellboy, with actual authority of the hotel to deliver automobiles to the lot, took possession of the keys and the vehicle, both the vehicle and the contents of the automobile were accepted by the hotel into its custody. It had physical control and the intent to control the property; a bailment relationship was therefore created. Accordingly, the trial court's conclusion that there was no contract of bailment between the hotel and appellant was erroneous. That payment for parking was made to the lot and not the hotel is immaterial for the service was incident to this type of a business and a hotel, particularly in a metropolitan area, derives indirect benefits and profits by providing such facilities.

■■ Turning to the hotel's acceptance of the property in the vehicle, appellant and his family were in transit stopping only for the night. They could reasonably be expected to leave luggage, wearing apparel, and other personal belongings in the car not necessary for their night's lodging. Courts have uniformly held that the liability of a bailee for hire for the loss of property in an automobile depends on notice or knowledge of the contents. The notice need not be actual or express; constructive or implied notice may be inferred.[5] Clearly the hotel was put on notice that appellant was a traveler and the apparel hanging from racks was in plain view. Upon entering the car the luggage on the floor and rear seat could easily be seen, and common knowledge and experience could anticipate that the car might contain in its interior other articles normally carried by travelers. On this point appellees rely on Lucas v. Auto City Parking Co., D.C.Mun.App., 62 A.2d 557. That case is distinguishable in that the property there was not in plain view and the claimed acceptance of the goods was based largely on custom which this court held to be of a unilateral nature.

■ Finally, as to the parking lot, we conclude that there was no privity between appellee lot and appellant. The evidence does not show that the original contract of bailment contemplated a sub-bailment. It neither shows that appellant by express or implied authority authorized a sub-bailment, nor that there was a ratification on his part of a sub-bailment.

■ This court has often held that whether the bailor's action is based on contract or negligence, proof of delivery and failure of the bailee to return the property make out a prima facie case of liability. The burden of proceeding with evidence shifts to the bailee to explain or justify the loss, or to introduce evidence showing that the loss or damage did not result from want of that degree of care the bailment required.[6]

In substance the evidence in this case simply disclosed that the hotel held itself out to appellant as providing parking facilities for his car. In reliance on the information of the desk clerk the car with most

5. Campbell v. Portsmouth Hotel Co., supra; Mee v. Sley System Garages, Inc., 124 Pa.Super. 230, 188 A. 626; Barnette v. Casey, 124 W.Va. 143, 19 S.E.2d 621. See Annotation, 27 A.L.R.2d 796.

6. Shea v. Fridley, D.C.Mun.App., 123 A.2d 358; Smith's Transfer & Storage Co. v. Murphy, D.C.Mun.App., 115 A.2d 300; National Mortgage & Inv. Corp. v. Shulman, D.C.Mun.App., 104 A.2d 420.

of its contents in plain view was entrusted to the hotel for safekeeping. The vehicle with its property was accepted by the hotel through its bellboy, who by actual authority and hotel practice was empowered to accept it. While the claim check given appellant contained both the names of the hotel and lot, appellant could have reasonably inferred that his car with its contents was still in the care and custody of the hotel.

The bulk of the defense evidence consisted of an attempt to show appellant's contributory negligence in leaving the property in the car and an attempt to show that the lot had exercised due care. We have previously discussed and disposed of the first point. A review of the evidence reveals that no explanation or justification is offered by the hotel for its failure to redeliver the property other than the fact of theft. Some evidence other than the mere allegation of theft is necessary before the burden of proving the bailee's negligence is shifted back to the bailor. The hotel has neither offered proof sufficient in weight and quality to show the loss was not connected with the lack of proper care on its part, nor has it offered any affirmative proof that it exercised the ordinary degree of care required in order to refute the inference of the prima facie case and prevent recovery.

We therefore reverse the judgment of the lower court and remand the case for a determination of the reasonable value of the lost property and the costs of repairs to the automobile, and for entry of judgment for the appellant in such sum against the hotel. In so doing, we are mindful that this court has many times ruled that the printed notice of limitation of liability on the claim check is not binding unless the terms are known to the bailor.[7] The complete absence of testimony as to knowledge of the limitation and agreement to it makes any contention of limited liability untenable.

Reversed with instructions.

7. Manning v. Lamb, D.C.Mun.App., 89 A. 2d 882; Lucas v. Auto City Parking Co., supra; Palace Laundry Dry Cleaning Co. v. Cole, D.C.Mun.App., 41 A.2d 231.