49419. HAYNIE v. A & H CAMPER SALES, INC.

CLARK, Judge.

"Not responsible for loss or damages to vehicles or

510

articles left in vehicles in case of fire, theft or any other cause beyond our control."

The foregoing exculpatory language was contained in a work order form which plaintiff signed at the time he delivered his 1972 Holiday Rambler trailer to defendant for the purpose of having defendant make some repairs. The quoted language was printed in a location one inch above the signature line and immediately above additional printed wording which authorized A & H Camper Sales, Inc. to render the directed service. The size and clarity of the print and its location were such that the plaintiff acknowledged "I could read it when I was signing it, if that's what you want to make clear. I could have read it if I had read the whole thing." (R. 29). During the hours of darkness that same evening or the following morning the appellant's Holiday Rambler trailer was stolen from defendant's premises. Plaintiff filed suit against defendant as bailee[1] for the value of the trailer and personalty therein, alleging the theft to have resulted from defendant's negligence. Denying negligence and relying upon the disclaimer language, defendant moved for a summary judgment after depositions had been taken of both parties. The instant appeal by plaintiff below is from judgment rendered for the bailee defendant.

In the trial court emphasis was placed upon our ruling in *Brown v. Five Points Parking Center,* 121 Ga. App. 819 (175 SE2d 901). The similarity of the facts in that case to the instant situation is such that we affirm the decision below. As was stated in the *Brown* case, "It is the duty of one who contracts to read and inform himself of the contract's terms." The language of the disclaimer here was thereby effectively made known to plaintiff and was binding upon him so as to exonerate defendant as to any liability for the theft from

---

[1] For charm and wit the dissenting opinion of Logan Bleckley on bailment of a hat in a barbershop in *Dilberto v. Harris,* 95 Ga. 571 (23 SE 112) cannot be surpassed. Paraphrasing present-day parlance: "Read it; you'll like it!"

defendant's premises.

It should be noted that the knowledge of the contractual liability limitation here attributable to plaintiff causes this case to be outside of those authorities which require such limitations to be made known to a bailor before the bailee can get the benefit of such exculpatory provision. For such cases see *Renfroe v. Fouche,* 26 Ga. App. 340 (106 SE 303); *American Laundry v. Hall,* 27 Ga. App. 717 (1) (109 SE 676); *Red Cross Laundry v. Tuten,* 31 Ga. App. 689 (1) (121 SE 865).

In a subsequent case, *Ellerman v. Atlanta American Motor Hotel Corp.,* 126 Ga. App. 194, 195 (191 SE2d 295), this court said "It is recognized that an ordinary bailee by contract may limit or completely exculpate himself from any liability for loss or damage to the bailed property as a result of his own simple negligence. [Cit.]" This principle was not applied there as a matter of public policy because it involved the innkeeper-guest relationship which was pre-empted by Code § 52-111. There is no similar public interest situation involved in the case at bar which is a common, everyday occurrence of personalty being placed in the custody of a commercial establishment - and - therefore - governed by the general law of bailments.

Appellant urges that we should apply the "unconscionability" provision of the Uniform Commercial Code (Code Ann. § 109A-2—302) to such disclaimers. We decline to do so since bailments of this type do not come within the unfairness which should exist before courts declare an established commercial practice to be so one-sided that exculpatory clauses thereon should be declared *verboten.* (See Chapter 4 entitled "Unconscionability" in White & Summers, Uniform Commercial Code, and "The Unconscionability Offense" by Michael H. Terry and John C. Fauvre in 4 Ga. L. Rev. 469). Our reluctance to extend the "unconscionability" doctrine in the instant situation is supported by the Comments portion of the 1962 Official Text of the Uniform Commercial Code from which our Georgia statute was taken. There the drafting Commissioners stated that "The basic test is whether, in the light of the general commercial background and the

commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED MAY 28, 1974 — DECIDED JULY 5, 1974 — REHEARING DENIED JULY 26, 1974 — 

*Amos R. Worth,* for appellant.
*Hurt, Hill & Richardson, W. Seaborn Jones, T. Cullen Gilliland,* for appellee.